**SO ORDERED.**

**SIGNED this 12 day of January, 2010.**

_____
**J. Rich Leonard
United States Bankruptcy Judge**

_____

### UNITED STATES BANKRUPTCY COURT
### EASTERN DISTRICT OF NORTH CAROLINA
### WILSON DIVISION

IN RE:

GREGORY ALLEN MOORE,   CASE NUMBER: 05-09201-8-RDD
                        CHAPTER 13
   DEBTOR.
_____

**ORDER DENYING RELIEF FROM THE AUTOMATIC STAY**

This matter came before the court on Steven Ira Cohen's ("Cohen") motion for relief from the automatic stay. A hearing on this matter was held on December 1, 2009 in Raleigh, North Carolina.

**BACKGROUND**

In October 2001, the debtor and Cohen entered into an agreement whereby the debtor purchased a chiropractic business from Cohen. The purchase price for the business assets was $450,000.00, which was evidenced by a promissory note and security agreement. On April 1, 2002, the same parties entered into a lease agreement for the rental of office space at a rate of $3,100.00 a month. Ultimately, the debtor defaulted under both the promissory note and the lease agreement. On May 20, 2005, Cohen initiated an action in the Superior Court of Pitt County for the recovery of damages. When the complaint was filed, Cohen was represented by

counsel, Larry Economos. However, on October 7, 2005, Economos withdrew as counsel. At that time, Cohen began representing his interest *pro se.* On October 13, 2005, the debtor filed for relief under chapter 13 of the Bankruptcy Code. The debtor was not served with the order allowing Economos to withdraw until October 14, 2005.

Beginning in March 2005 and continuing until approximately May 2007, Cohen was incarcerated under charges of mail fraud at the Federal Correctional Institution ("FCI") in Petersburg, Virginia. While incarcerated, inmates receive mail that is directed to their individually assigned inmate identification number. Cohen's inmate identification number was 23980-056. At the hearing, Cohen asserted that he never received notice of the debtor's bankruptcy. Cohen was listed as a creditor on the debtor's filed petition. The petition contained Cohen's correct name, prison address, and inmate identification number. However, there was a one digit error in the transcription of the inmate identification number from the mailing matrix to the service list for the Notice of Meeting of Creditors sent by the chapter 13 trustee that was replicated in all further notices. On all mailings sent out, Cohen's inmate identification number appeared as 23900-56. Cohen stated that if mail sent to FCI Petersburg did not bear the correct inmate identification number, regardless of otherwise correct information, it would not be delivered to the intended recipient. At no time during his incarceration was mail returned alerting a sender that Cohen may not be receiving correspondence. Cohen alleges that he only learned of the debtor's bankruptcy in the summer of 2009.

Before serving his sentence at FCI Petersburg, or soon thereafter, Cohen executed a power of attorney, naming Linda Leggett as his legal representative. Pursuant to the power of attorney, Leggett was authorized to deal with Cohen's ongoing financial affairs and property

2

management.  One such property Leggett managed was the office space rented by the debtor.  Although Leggett was not listed on the mailing matrix, since she herself was not a creditor, the debtor stated that he first informed her in the summer of 2005 that he intended to file for bankruptcy.  The debtor again notified Leggett of his bankruptcy shortly after the petition was filed in October 2005.  While it appears that Leggett knew of the debtor's bankruptcy, Cohen asserts that she never shared this information with him.

Economos also received notification of the bankruptcy.  The debtor, having prepared his petition prior to learning of Economos' withdrawal, listed Economos among those to be noticed.  In December 2005, Economos was rehired by Leggett on Cohen's behalf to represent his interest in a separate property matter.  Throughout this time, no return notices were received from Economos' office.  Therefore, it is presumed that Economos was informed of the ongoing bankruptcy.  Furthermore, Cohen himself rehired Economos upon his release from prison in 2007.  Economos was rehired to determine the status of several pending state court cases, one of which was the May 2005 action in Pitt County that was stayed by the bankruptcy.

With the complaint still pending against the debtor in the Superior Court of Pitt County, Cohen now seeks relief from the stay so that he may proceed against the debtor.  Cohen asserts that he is owed $180,000.00 on the promissory note.  The rental agreement was assumed under the debtor's confirmed plan.

## DISCUSSION

Pursuant to 11 U.S.C. § 362(d)(1), the court may grant relief from the automatic stay by terminating the stay for cause.  The court is not convinced that such relief is merited here.  This case has been presented to the court under the guise of a motion for relief from stay; however,

3

based on the record, what appears to be before the court is the issue of dischargeability.

Under current statutory provisions, a debtor must file with the court a list of creditors. 11 U.S.C. § 521(1). If a debt or creditor is not listed, the debt may be non-dischargeable under § 1328(a)(2) which incorporates § 523(a)(3). That section provides that an unlisted debt will be non-dischargeable unless the creditor had notice or actual knowledge in time for a timely filing of a proof of claim. This has been referred to as the no notice/no discharge provision of the Code. Colonial Sur. Co. v. Weizman, 564 F.3d 526, 531 (1st Cir. 2009). While the impact of notice on exceptions to discharge under § 523(a)(3) is now settled by statute, this court cannot make a determination on this basis. The debtor's bankruptcy was filed on October 13, 2005. This date is critical to our discussion as it fell four days prior to BAPCPA. Therefore, this analysis must be grounded under pre-BAPCPA law.

Previously, § 523(a)(3) was inapplicable in a chapter 13 case because it was omitted from incorporation under § 1328. In re Greenburgh, 151 B.R. 709, 713 (Bankr. E.D.Pa. 1993). The language of § 1328 provided that the court should grant a discharge of all debts provided for by the plan, except any debt specified in paragraph (5), (8), or (9) of § 523(a). Paragraph (3) was not excepted from discharge. Strict construction would, therefore, render Cohen's claim dischargeable. However, pre-BAPCPA courts seemingly ignored this result.

Dissatisfied with the outcome of § 1328 as applied to unlisted debts, courts refused to discharge a debt where there was no evidence of notice. In re Greenburgh, 151 B.R. 709 at 713. This effort to balance equities turned on either an inferred reading of the statute or on constitutional grounds. Where a debt or creditor was completely unlisted and without notice, rulings were based on the premise that such debt could not reasonably be "provided for," under §

4

1328.  In re Cash, 51 B.R. 927, 929 (Bankr. N.D.Ala. 1985)("[I]t would be a strained construction to view the plan as providing for a debt owed to a creditor, when the debtor omits the debt and creditor from the Chapter 13 Statement."); In re Hairopoulos, 118 F.3d 1240, 1244 (8th Cir. 1997).  The facts before this court do not support non-dischargeability on this basis.  Cohen's name and the debt were listed on the petition and on the mailing matrix.  He was, therefore, "provided for" in the literal sense.  However, the mistranscription, which Cohen asserts rendered all mailings undeliverable, raises the constitutional issue of whether the claimed debt should be rendered non-dischargeable due to a lack of notice.

Notice is rooted in the tenets of due process.  Such principle recognizes that all creditors have a right to fully participate in bankruptcy proceedings.  In re Greenburgh, 151 B.R. at 715; In re Hairopoulos, 118 F.3d at 1244.  The amount of notice required to satisfy due process is adequate or reasonable notice.  As defined by the Supreme Court, reasonable notice is that which is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950).  Thus, under this pre-BAPCPA analysis, it is incumbent upon this court to ask if: (1) Cohen received notice, and (2) was the notice reasonable.  If the answer to these inquires is "yes," then no violation of due process was committed, and the debt shall be dischargeable.

The mistranscribed inmate number presents a scenario in which Cohen conceivably received no notice.[1]  Nonetheless, the court finds that the claim against the debtor is

---

[1]At hearing, the court was unconvinced that such a minor discrepancy would render mail wholly undeliverable, nor that the Bureau of Prisons would be so cavalier in handling mail from the courts as Cohen claims.  It is generally axiomatic that when notice is sent it is received.  However, upon further consideration, the court gives Cohen's testimony more credit as to this

discharegable.  Knowledge of a bankruptcy proceeding may be imputed to a creditor whose attorney has notice.  In re Tucker, 235 B.R. 575, 579-580 (Bankr. M.D.N.C. 1998)(Even though the creditor did not receive formal notice, the creditor's attorney having actual knowledge 38 days prior to the deadline for filing a complaint was reasonable notice to the creditor); In re Price, 871 F.2d 97, 99 (9th Cir. 1989)(Counsel's actual knowledge of the bankruptcy proceedings in time to file a complaint or motion for extension of time constituted notice to the appellant).  However, such rule is not absolute.  An exception is carved out that an attorney's representation of a party in one action does not make the attorney an agent for said party in a separate case, even when the separate case is between similar parties.  Maldonado v. Ramierz, 757 F.2d 48, 51 (3rd Cir. 1985).  Here, notice of the bankruptcy to Economos fits the exception and did not automatically constitute notice to Cohen.  While Economos did resume a client/attorney relationship with Cohen in December 2005, the matter was unrelated to the bankruptcy or the property leased by the debtor.  Only if Economos received notice of the bankruptcy while representing Cohen as a creditor could knowledge be imputed.  Id.  As it was, Economos did not represent Cohen at the time of the petition, and did not resume representation related to the bankruptcy until 2 years beyond the bar for a timely filing.  Actual knowledge of the bankruptcy was, however, communicated to Leggett.

"Notice or actual knowledge of the bankruptcy filing will be imputed to [the] creditor when it comes to someone who has clear authority to act for [the] creditor."  In re Marino, 195 B.R. 886, 895 (Bankr. N.D. Ill. 1996)(citing In re Silver, 107 B.R. 328, 329 (Bankr. D.N.M. 1989)).  As Cohen's legal agent, Leggett was verbally notified of the bankruptcy on at least two

---

particular fact. If the mistranscription were enough to divert Cohen's mail, then in essence he was an unlisted creditor.

6

separate occasions. The first occasion, pre-petition, was enough to alert her of the possibility that a bankruptcy was pending. While this may be notice of a more tenuous nature, the second verbal communication, shortly after the petition was filed, clearly provided her actual knowledge that was well within the period for a timely filing. Regardless of whether Leggett shared her knowledge with Cohen during his incarceration, she had full authority to submit the proof of claim on his behalf and chose not to do so. As Cohen's attorney-in-fact, Leggett's knowledge can unquestionably be imputed. The first question of whether notice was received is thus satisfied.

Beyond receipt, however, the notice must also be reasonable. After reviewing the totality of the circumstances, the court finds that the notice to Leggett was reasonable. The burden of providing reasonable notice rests with the debtor. In re Hairopoulos, 118 F.3d 1240 at 1244. However, a creditor is not without some duty of investigation to protect their interests. Once a creditor [or someone acting at their behest], "receives any notice from the bankruptcy court that its debtor has initiated bankruptcy proceedings, it is under constructive or inquiry notice that its claim may be affected, and it ignores the proceedings to which the notice refers at its peril." In re Gregory, 705 F.2d 1118, 1123 (9th Cir. 1983). In Greenburgh, a creditor received a letter stating that information about the creditor's meeting would be forthcoming. The creditor received no further information about the status of the bankruptcy case. The court held that when something said to be "forthcoming" never arrives, the burden shifted to the creditor to further investigate. 151 B.R. 709 at 717 - 718.

Here, the debtor carried his burden of notification. All parties that required notice were included on the petition. Moreover, knowing that Leggett was not on the petition, but that she

held Cohen's power of attorney, the debtor personally informed her of the bankruptcy at least twice. The debtor was at all times candid with Leggett about his affairs, and his bankruptcy case. Receiving direct verbal communication from the debtor himself was reasonable under the circumstances, and functioned to put Leggett on inquiry notice. Deeming the notice to Leggett to be both received and reasonable, due process was satisfied and the debt shall be dischargeable.

There is, however, a wrinkle on the issue of the rental agreement. Under the debtor's confirmed plan, the lease pertaining to the office space was assumed pursuant to § 365. As such, the lease became an administrative expense of the estate, and must be paid in full. 11 U.S.C. § 365(b)(1). The court may allow a tardy claim for payment of an administrative expense for cause. 11 U.S.C. § 503. The debtor testified that he believed all of the lease payments had been timely made through the plan. Cohen, having received a payment history from Leggett, disagrees. Without further evidence of record, the court is unable to make a determination of this matter at this time.

## CONCLUSION

Based on the foregoing, the motion couched as a motion for relief from the automatic stay is **DENIED**. The debt related to the promissory note between the debtor and Cohen will not survive discharge. However, consistent with the oral ruling at the hearing, Cohen shall be granted 20 days from the date of hearing to file an administrative claim for any amount of the lease which has not been paid into the confirmed plan. Discharge will not be entered until all lease payments are accounted for.

**END OF DOCUMENT**